```
                       UNITED STATES DISTRICT COURT
                         DISTRICT OF CONNECTICUT

--------------------------------x
DONALD MACINNIS,                :
                                :
            Plaintiff,          :
                                :
v.                              : Civil No. 3:08CV00841(AWT)
                                :
TOWN OF ORANGE,                 :
                                :
            Defendant.          :
--------------------------------x
```

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Donald MacInnis ("MacInnis") brings this action against defendant Town of Orange (the "Town") alleging that the Town deprived him of a constitutionally protected property interest without due process of law in violation of 42 U.S.C. § 1983. The Town has moved for summary judgment. For the reasons set forth below, the motion is being granted.

**I.   FACTUAL BACKGROUND**

The Town is governed by a Charter. Pursuant to the Charter, the Board of Selectmen is the legislative power of the Town. The First Selectman is the chief executive officer of the Town and is elected to a two-year term of office. Section 9.1 of the Charter provides for Appointed Officers of the Town. This section enumerates several Appointed Officers and then provides for "such other Appointed Town officers whose office is created by an amendment to the Charter or by appropriate action of the

Legislative Authority." (Def., Town of Orange's, Mot. for Summ. J. (Doc. No. 16), Ex. A at C-19.)  Section 4.4 provides that the First Selectman shall appoint all Appointed Officers.  All appointments are reviewed by the Board of Selectmen.  Such appointments automatically become effective unless disapproved by resolution of the Board of Selectmen within 10 days after presentation by the First Selectman.  Section 9.6 provides that Appointed Officers hold office for terms of two years and that they take office 30 days following biennial Town elections. Pursuant to Section 10.5 of the Charter, an Appointed Officer holds office until his or her successor has been chosen and qualified.

The Board of Selectmen created Rules and Regulations for Town Employees Not Covered by Collective Bargaining Agreements (the "Rules and Regulations").  The Rules and Regulations are "applicable to all employees in the classified system."  (Def., Town of Orange's, Mot. for Summ. J., Ex. F at 1.)  The classified service is "defined to include appointees . . . except," inter alia, elected officers and people appointed to fill vacancies in these offices; members of boards, commissions, committees, and authorities; the Town Attorney, Police Chief, and Assistant Police Chief; and employees covered by collective bargaining agreements under the Connecticut Municipal Employees Relations Act.  Id.  Section 9 of the Rules and Regulations states that

"[a]ll separations of employees from positions in the classified service shall be designated as one of the following types and shall be accomplished in accordance with the manner indicated: resignation, layoff, disability, death, retirement, [or] dismissal." (Id. at 21.)  Section 9 provides the procedure for each type of separation except dismissals.  Section 11 sets forth provisions governing "Disciplinary Actions and Complaint Procedures," including a procedure for dismissal based on "performance, conduct, or other unsatisfactory behavior." (Id. at 31.)  In such situations, the department head may, with the First Selectman's approval, dismiss an employee by providing the employee with "written notice of the reasons for the discharge and the effective date." (Id.)

In 1995, Robert Sousa was elected First Selectman, and he was reelected in 1997.  In 1998, First Selectman Sousa requested that the Park and Recreation Commission recommend an individual for the position of Director of Park and Recreation.  The Park and Recreation Commission is provided for in the Charter in Section 6.50.  In 1999, the Park and Recreation Commission interviewed Donald MacInnis.  In February of that year, he was appointed to the position with a term to expire after the next biennial Town election.

In the November 1999 election, Mitchell Goldblatt was elected First Selectman.  Following Goldblatt's election, he

"chose not to make several appointments of Appointed Officers until [he] had a chance to review the positions." (Def., Town of Orange's, Mot. for Summ. J., Ex. C at ¶ 7.)  Goldblatt sent a letter dated December 2, 1999 to MacInnis stating that Goldblatt was in the process of reviewing all appointments and that MacInnis's "term in office was effective until . . . re-appointment or [until] a successor had been appointed." (Id. at ¶ 11.)

On February 11, 2000, the Chairman of the Park and Recreation Commission, Lee Warncke, wrote to First Selectman Goldblatt to express concern that MacInnis had not been officially reappointed.  In a letter dated February 22, 2000, Goldblatt notified MacInnis that he was being reappointed and his term would expire December 6, 2001.  The letter stated:

> I am pleased to notify you that I am re-appointing you as Director of Park & Recreation for the Town of Orange.  Your term of office will expire on December 6, 2001.
> In order to make your appointment complete, will you please, at your earliest convenience, come to the Town Clerk's Office in Town Hall and take the Oath of your Office.  Please bring this letter with you.  Your services will not be official until you have been sworn in.

(Id., Ex. 3.)  The re-appointment letter contained a place for the Town Clerk to attest to the administration of the oath. Goldblatt was reelected in 2001 and 2003.  Following these reelections, he purposely chose not to reappoint several

-4-

Appointed Officers, including MacInnis, so he would have the option of replacing those Appointed Officers before the next election.

In 2005, James Zeoli was elected as First Selectman. He sent a letter to Appointed Officers stating he was considering appointments and that, under the Charter, Appointed Officers would continue to serve until re-appointed or replaced. MacInnis continued to serve on this basis. In 2007, Zeoli was reelected. On or about December 6, 2007, Zeoli called MacInnis into his office. Zeoli informed MacInnis verbally and in writing that he was not being reappointed, and that his employment was terminated as of December 7, 2007. On December 11, 2007, Zeoli appointed Dan Lynch as Acting Director of Park and Recreation.

MacInnis claims the Director of Park and Recreation is not an Appointed Officer. MacInnis contends that he was a classified employee subject to the Rules and Regulations, and that pursuant to the Rules and Regulations, he could only be dismissed for disciplinary reasons. MacInnis also contends that when the Town terminated his employment, it deprived him of a constitutionally protected property interest without due process of law.

## II. STANDARD

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue

warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c). See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must respect the province of the jury. The court, therefore, may not try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Board of Fire Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id. at 248. Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted. When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine whether a resolution of that dispute could affect the disposition of any of those claims or defenses. Immaterial or minor facts will not prevent summary judgment. See Howard v. Gleason Corp., 901 F.2d 1154, 1159 (2d Cir. 1990).

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the nonmovant and . . . draw all reasonable inferences in its favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Del. & Hudson Ry. Co. v. Consol. Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990)). Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion. Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture" is insufficient to defeat a motion for summary judgment. Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)). Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position" will be insufficient; there must be evidence on which a jury could "reasonably find" for the nonmovant. Anderson, 477 U.S. at 252.

Finally, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp., 477 U.S. at 324. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact,"

Weinstock, 224 F.3d at 41, if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, which must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)(quotation marks, citations and emphasis omitted).  Furthermore, "unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.  If the nonmovant fails to meet this burden, summary judgment should be granted.  The question then becomes whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party.  See Anderson, 477 U.S. at 248, 251.

**III. DISCUSSION**

To prevail on a procedural due process claim, a plaintiff must first establish that he was deprived of a constitutionally-protected property or liberty interest. Narumanchi v. Bd. of Trs. of Conn. State Univ., 850 F.2d 70, 72 (2d Cir. 1988).  An employee has a property interest in his or her job only where he or she cannot be discharged in the absence of good cause. See, e.g., Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (finding that public employee had property interest in his job because he could only be discharged for good cause).  The

-9-

inquiry for the court is whether the plaintiff has a contractual right giving rise to a "legitimate claim of entitlement" to continued employment. Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972). The plaintiff "must have more than a unilateral expectation" of entitlement to a position in order to have a property interest. Id. Because the Constitution does not create property interests, the court must look to "existing rules or understandings." Id. The Supreme Court has held that a legitimate claim of entitlement can arise, not only from a contract, but from rules or mutually explicit understandings. See Perry v. Sinderman, 408 U.S. 593, 601 (1972).

Here, there is no contract, rule, or a mutually explicit understanding to support MacInnis's claim of entitlement to his position as Director of Park and Recreation. Rather, MacInnis claims that the Director of Park and Recreation is not an Appointed Officer. He also argues that he was an employee in the classified service and therefore, under the Rules and Regulations, could only be terminated for disciplinary reasons. MacInnis has failed to create a genuine issue as to either point.

MacInnis's last re-appointment occurred on February 22, 2000 and, under the terms of the appointment, his term of office expired on December 6, 2001. Thereafter, in accordance with the Charter, he continued to serve until such time, if any, when he was reappointed or a successor was named. He was not reappointed

following the 2001, 2003, and 2005 elections.  Rather, he continued to serve at the pleasure of the First Selectman, until such time as he was either re-appointed or replaced.  Following First Selectman Zeoli's reelection in 2007, MacInnis was replaced.

Therefore, because MacInnis was told when he was appointed on February 22, 2000 that his term of office would not expire until December 6, 2001, he had a legitimate claim of entitlement to the position of Director of Park and Recreation, and thus a property interest in that position, during the period from February 22, 2000 to December 6, 2001.  But MacInnis had no property interest in his employment beyond the term of his last re-appointment.  Thereafter, he served at the pleasure of the First Selectman and did not have a property interest in the position.  Thus, MacInnis did not have a property interest in the position on December 6, 2007, when First Selectman Zeoli informed him that he would not be reappointed and his employment was being terminated.

MacInnis argues that he was never informed that he was an Appointed Officer under the Charter.  However, it is undisputed that First Selectman Goldblatt's December 2, 1999 letter to MacInnis stated: "I am still in the process of reviewing all appointments and consistent with Section 9 of the Town Charter your term of office is effective until re-appointment or until a

-11-

successor has been appointed." (Def., Town of Orange's, Mot. for Summ. J., Ex. C, Ex. 1.) Article IX of the Charter pertains only to "Appointed Officers."

MacInnis contends that he was not an Appointed Officer because his position was not expressly mentioned in the Charter. He argues that the Charter was revised in 1992 and could have been amended then to specifically refer to the position of Director of Park and Recreation. However, it is undisputed that the Board of Selectmen chose to not specifically refer to certain appointed positions at the time of the 1992 amendment to the Charter because the Board of Selectmen wanted to retain the ability to eliminate those jobs without having to amend the Charter. Thus, MacInnis has failed to create a genuine issue as to this contention.

MacInnis emphasizes his own belief that he was not an Appointed Officer. MacInnis's understanding of his position is immaterial. A unilateral expectation of continued employment is insufficient to create a protectable property interest. See Roth, 408 U.S. at 577.

MacInnis also argues that he was an employee in the classified service, and therefore, under the Rules and Regulations his employment could not be terminated without cause. "A public employee who has a right not to be fired without 'just cause'. . . has 'a property interest in [his] employment that

-12-

qualifies for the protections of procedural due process.'" Otero v. Bridgeport Hous. Auth., 297 F.3d 142, 151 (2d Cir. 2002).  The Rules and Regulations apply to appointees and elected officials, with enumerated exceptions.  The Director of Park and Recreation is not an enumerated exception and, as an Appointed Officer, is covered by the Rules and Regulations.  However, MacInnis was not an appointee at all times.  MacInnis was an appointee from February 1999 until after the November 1999 election when, under the Charter, his term expired.  He was then an appointee from February 22, 2000 until December 6, 2001, when his term expired.  Between his first term as an appointee and his second term as an appointee, he held no appointment.  He simply served at the pleasure of the First Selectman.  When MacInnis held an official appointment, he was covered by the Rules and Regulations, and when MacInnis did not hold an appointment, he was not covered by the Rules and Regulations.  MacInnis did not hold an appointment on December 6, 2007, so he was not covered by the Rules and Regulations at that time.

There is not sufficient evidence here for a reasonable jury to find that MacInnis had a legitimate claim of entitlement to his job.  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005); see Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 462-63

(1989).  Because MacInnis served at the discretion of the First Selectman, he did not have a protectable property interest in continued employment as the Director of Park and Recreation.  At most, he had a unilateral expectation of continued employment, and thus cannot demonstrate that he had a property interest protected by the Constitution.

**IV.   CONCLUSION**

For the reasons set forth above, the Defendant, Town of Orange's, Motion for Summary Judgment (Doc. No. 16) is hereby GRANTED.

The Clerk shall enter judgment in favor of the defendant and close this case.

It is so ordered.

Signed this 3rd day of September, 2009 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
